(No. 24532.

A. M. McDiarmid *et al.* Appellees, *vs.* Bertha McDiarmid *et al.* Appellants.

*Opinion filed April 20, 1938—Rehearing denied June 15, 1938.*

Lord & Parker, and Latham Castle, for appellants.

John K. Newhall, and Cockfield & Petersen, for appellees.

Mr. Chief Justice Farthing delivered the opinion of the court:

The circuit court of Kane county by its decree canceled two deeds as clouds on the title of complainants, granted partition of the land and ordered the appellants to account

in accordance with the prayer of the appellees' amended complaint. Bertha McDiarmid, one of the defendants, and Joseph Ness, have appealed from that decree.

Horatio N. Woodward and wife conveyed the 307 acres in question to Elizabeth McDiarmid, a widow, and her son John R. McDiarmid, husband of Bertha McDiarmid, both of whom are now dead, as tenants in common, by deed dated December 11, 1916. Several years before this, John R. and his father had contracted to purchase the land, paid $500 as an initial payment and agreed to pay $1000 per annum with interest on the unpaid principal. When the father died, $5500 had been paid on the purchase price. The family continued to live on the land and payments of principal and interest were made annually. A mortgage was given at the time of the deed mentioned, and this was later paid and released of record. The answer admits, as does also the appellant McDiarmid, in her testimony, that Elizabeth and John R. McDiarmid were tenants in common and that each owned an undivided one-half interest in the land. Elizabeth McDiarmid also owned half the personal property on the farm. When she died March 17, 1919, three of her children lived in Illinois, and the other six lived in other parts of the United States and in Canada. In 1919 and 1920, John R. McDiarmid sold the personal property on the farm and agreed to sell the farm to parties named Peckham and Liefheit. Later, Francis Fogarty, who is still living in LaSalle county, Illinois, was substituted as a purchaser. There were two judgments, one for $50 and the other for $295, against one of the appellees, Maggie Pettit, which were liens on her interest in the land. Because of these, McDiarmid had some difficulty in showing a merchantable title and he reduced the cash payment to be made by Fogarty. McDiarmid wrote letters to his brothers and sisters telling them of this sale, both before and after it was made. He also made payments to them, taking receipts, all of which show payment to them of money on account

of their various shares in the land or in the estate of one or both of their parents. Judge William Fulton, who is living, was mentioned by McDiarmid as his adviser in the letters written to his brothers and sisters.

Fogarty did not complete the purchase but gave up the land on March 1, 1923, and forfeited more than $10,000, which he had paid. McDiarmid had no other property and no means during the time he was on the farm, except the receipts from it. There was one bank account and, until their marriage, several of the brothers and sisters were at home and assisted in the work on the farm. January 2, 1920, the eight other brothers and sisters, with their husbands and wives, executed a quitclaim deed to the land to John R. McDiarmid. He wrote a letter to one of his sisters, after Fogarty gave up the farm, in which he said they would have to keep the farm and keep the taxes paid until land improved in price. The letters were objected to, but the proof showed that they were in McDiarmid's handwriting and that his sister, Elizabeth Voris, obtained them by mail from her brothers and sisters to whom they were written. Bertha McDiarmid was called by appellees as an adverse witness and later testified in her own behalf. She did not deny the genuineness of the letters. Two of the letters were identified by the recipients who stated they received them by mail from John R. McDiarmid.

The appellants contend that no sufficient foundation was laid for the admission of these letters in evidence, and that they are like documents written but never delivered by the writer. They cite, as authority, 22 Corpus Juris, section 346, page 308, as follows: "Where a document is of a character ordinarily delivered to another person, but it has never been delivered, it may fairly be contended that statements therein were in effect never made, and hence do not constitute admissions which are receivable in evidence." However, as we have indicated, the proof shows that these letters were obtained from the persons to whom they were written, and

that two of them were received by appellees who testified. These were not undelivered documents retained by McDiarmid, and they were properly admitted in evidence.

The appellants' defenses were *laches,* the Statute of Frauds and the claim that Bertha McDiarmid's husband bought and paid for the interests of his brothers and sisters in the land. As to this last defense there is no proof and it need not be further discussed.

The appellants contend that Bertha's brothers-in-law and sisters-in-law own, at most, only the proportionate interest that half of the $5500, paid when their father died, bore to the entire purchase price. No such claim was made in the pleadings. We have pointed out that appellants admitted by their answer, and in Bertha's testimony, that John R. and Elizabeth McDiarmid, his mother, were tenants in common and that each of them owned an undivided half interest in the land. This disposes of this contention.

Shortly before the deed to Bertha, executed by herself and John R. McDiarmid, her husband, which reserved a life estate to him, his sister Elizabeth Voris and her husband had two conversations with McDiarmid. Bertha was present on one or both of these occasions. The Vorises asked for a deed to protect Mrs. Voris in the event of McDiarmid's death. McDiarmid put her off and so did his lawyer. Sometime later her lawyer discovered that McDiarmid had deeded the land to Bertha on February 14, 1928. A suit was instituted before McDiarmid's death in 1930, but dismissed for want of prosecution. The present suit was filed June 30, 1936. Appellants say that since McDiarmid and several of the witnesses are dead, and since appellees dismissed their first suit and did not begin this action for six years, they are guilty of *laches.* In their answer they set up the seven-year Statute of Limitations, payment of taxes and color of title, but they do not mention this defense in their brief, hence it is waived. The first indication that John R. McDiarmid intended to hold the land adversely came when his

sister, Elizabeth Voris, discovered that he had conveyed all but a life estate in this land to his wife. Equity does not adhere strictly to statutory periods of limitation but determines from the facts of each case whether a claimant has been guilty of *laches.* (*Whetsler* v. *Sprague,* 224 Ill. 461, 467.) If the claim is enforced and a harsh result would thereby be occasioned the party seeking to enforce it is chargeable with *laches.* Here, McDiarmid continued to operate the farm and made no settlement with his brothers and sisters. He did nothing to change his position. His deed to his wife reserved a life estate. He was a tenant in common with his brothers and sisters and could not be said to hold adversely to them. Everything he wrote to them proves he made no adverse claim. The chancellor was correct in holding that the defense of *laches* was not established.

In support of their contention that they have proved an express trust appellees rely on our holdings in *Kingsbury* v. *Burnside,* 58 Ill. 310, and many other decisions, including *Whetsler* v. *Sprague, supra.* These decisions hold that the Statute of Frauds has been complied with if the trustee makes a memorandum or writing showing that the property is held in trust. The details and terms of the trust may be established *aliunde* and even by parol evidence. Thus, it is held, after an exhaustive review of the authorities in the *Kingsbury case,* that in order to establish an express trust and to meet the requirements of the Statute of Frauds it is not necessary that it be established by a formal declaration of the trust but it is sufficient if it be proved by letters or other memoranda. The writing need not be an instrument expressly framed for the purpose of acknowledging the trust. It is sufficient if the recognition or admission of the trust be incidentally made in the course of correspondence, and almost any memorandum will suffice. The letter or memorandum need not be addressed to the *cestui que trust* and may be written after title has been

acquired by the trustee. The letters contained in the record before us satisfy the requirements of the statute and are supported by the receipts, many of which were also written by John R. McDiarmid, and show that he was paying his brothers and sisters their part of the proceeds of the sale of the land, title to which he held for them. He again wrote that it would be necessary to hold the land for a better price after Fogarty had surrendered possession.

The express trust was abundantly proved and it is not necessary to discuss any contention as to the existence of an implied trust. In the *Kingsbury case* we held that if there is an express trust, even though it be an oral one and, hence, barred by the Statute of Frauds, there can be no implied trust. With the exception of such cases as *Larmon* v. *Knight,* 140 Ill. 232, that rule has not been changed.

For the reasons stated, the decree of the circuit court of Kane county is affirmed.

*Decree affirmed.*