Joanna Gwin Clow CLAYTON and Joanna Gwin Clow, a minor, by Hugh A. Clayton, her next friend, Plaintiffs,

v.

JAMES B. CLOW & SONS, a corporation, and Hattie B. Clow Pryor, as Trustee under the Will of Charles R. Clow, Sr., deceased, et al., Defendants.

No. 55 C 944.

United States District Court
N. D. Illinois.

July 12, 1957.

Theodore C. Diller, William H. Hillier, Charles H. Weiland, Chicago, Ill., for plaintiff.

James A. Velde, Lloyd W. Bowers, Peter H. Merlin, Chicago, Ill., for certain defendants.

Charles M. Price, Cranston Spray, James T. Otis, Chicago, Ill., for certain defendants.

JULIUS J. HOFFMAN, District Judge.

The defendants in this civil action have presented motions seeking dismissal, judgment on the pleadings and summary judgment. Affidavits, extensive depositions, and voluminous exhibits have been offered both to support and to oppose the motions, and the questions presented have been ably and exhaustively briefed on both sides.

The controversy involves conflicting claims to certain shares of stock in a closely held corporation, James B. Clow & Sons. The transactions which gave rise to the dispute are complex, and will be recounted here, in the interests of brevity, only to the extent necessary to a disposition of the defendants' motions. For convenience, these motions will be divided into three branches and considered separately. First taken up will be the motions for judgment on the pleadings, for summary judgment, and for dismissal of the complaint for failure to state a claim upon which relief can be granted, in so far as they are based upon the asserted legal and factual insufficiency of the plaintiffs' claims viewed on their merits. Second to be considered will be the defendants' motion for judgment upon the ground that the claims are barred by the statute of limitations or by laches. The third section of the memorandum will deal with the motion to dismiss the action for failure to join indispensable parties.

Summary Judgment on the Merits

All the defendants, represented in two groups in the action, have moved for judgment on the pleadings in their favor or, in the alternative, for summary judgment. In support of the motion, it is asserted that the complaint fails to state a claim upon which relief can be granted and that the facts not genuinely disputed establish the insufficiency of the plaintiffs' claim. In addition, matters which are said to raise an estoppel or to constitute a release of any claims are submitted by way of avoidance. Since the parties on both sides have relied upon matters outside the pleadings to support their respective positions, the motion will be treated, under Rules 12(b) and 12(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., as a motion for summary judgment under Rule 56.

■■ So regarded, the motion cannot be decided upon the basis of the pleadings alone. The purpose of summary procedures is the avoidance of what may turn out to be shadow-boxing with formal pleading allegations having no foundation in admissible evidence. The object is to identify those cases which would be subject to summary disposition, by directed verdict or its equivalent, at the trial, and to eliminate the unnecessary delays and expense of commencing such a useless trial. "Summary judgment procedure enables district judges to nip in the bud litigation which would wilt, if the case went forward to a trial on the merits, because there was no genuine issue as to any material fact." Homan Mfg. Co. v. Long, 7 Cir., 1957, 242 F.2d 645, 653. The fact that a triable issue is presented by the pleadings does not answer the question presented by a motion duly made and supported. The parties must be prepared to show that their claims and defenses are backed up by admissible evidence which would suffice, at a trial on the merits, to create a genuine question of fact appropriate for determination by

the jury or, where no jury is employed, by the judge sitting as the trier of fact. Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 624, 64 S.Ct. 724, 88 L.Ed. 967. The motion therefore cuts through the bare pleading allegations, and penetrates to the factual core of the controversy. Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 1950, 179 F.2d 265; Repsold v. New York Life Ins. Co., 7 Cir., 1954, 216 F.2d 479.

■ Summary judgment procedures, however, do not replace the trial. Genuine and disputed questions are not to be decided on the paper record of affidavits and depositions in place of the live testimony of witnesses offered in open court, in the presence of the trier of fact and subject to full cross examination. "A summary judgment proceeding is not a substitute for a trial, but rather a judicial search for determining whether genuine issues exist as to material facts. (Citations omitted.) The lower court cannot try out factual issues on a motion for summary judgment because once such an issue is found the court's function on that aspect of the case ends." Homan Mfg. Co. v. Long, 7 Cir., 1957, 242 F.2d 645, 656. If it appears from the materials submitted on the motion that relevant and material facts are in dispute, either because evidence as to primary fact is conflicting or because inferences from admitted fact could reasonably be drawn in different ways, the questions of credibility and of inference must be deferred to a full trial. See Fox v. Johnson & Wimsatt, Inc., 1942, 75 U.S.App.D.C. 211, 127 F.2d 729, 737; Note, 51 Northwestern L. Rev. 370 (1956).

■ The motion for summary judgment is designed to save time, expense and effort. In furtherance of this purpose the rule should not be construed to require in all cases a full paper rehearsal of the trial. It follows that the defendant should not be permitted, simply by filing an unsupported motion, to cast upon the plaintiff the burden of showing by affidavit or deposition all the evidence he plans to offer on every element of the case he would be obliged to prove in order to avoid a motion for a directed verdict. The time and expense required to defend against the motion must be kept within limits reasonably commensurate with the purpose of saving time and expense. Accordingly, the moving party bears the burden of an affirmative showing that full trial is unnecessary. 6 Moore, Federal Practice 2070–2071 (2d Ed. 1953).

■ The party who would carry the burden of proof at the trial is obliged, in resisting the motion, to demonstrate only that his claim is backed by admissible evidence in those particulars specifically singled out by the moving party. When a defendant supports his motion for summary judgment with proper affidavits or depositions tending to show that certain allegations of the complaint are untrue, the plaintiff cannot rely upon his pleading alone, but must come forward with affidavits or other proof that he will be able to produce evidence at the trial to support his contention. But he need go no further. The burden of the motion rests upon the moving party.

The Factual Background.

■ Before the particular questions raised by the defendants are reached, the transactions in issue will be described briefly. In considerable part the basic facts are undisputed. Where a genuine disagreement is presented, the acceptance of the plaintiffs' contention is required by the nature of the motion, and the facts are stated accordingly.

At the time of his death in 1910, Charles R. Clow, Sr., was the owner of 437½ common shares of the corporation known as James B. Clow & Sons, Inc., hereafter called the Company. The Company's stock was held primarily by the decedent and his brothers, William E. Clow, Sr. (hereafter William, Sr.), Harry B. Clow, Sr., and James C. Clow. By the terms of his will, Charles R. Clow, Sr., requeathed this stock to his widow, Hattie B. Clow, later Hattie B. Clow Pryor and referred to hereafter as Mrs. Pryor, as trustee. Under the trust so

established, Mrs. Pryor was to receive all dividends during her lifetime, and was authorized to sell any or all of the stock with the consent of the three surviving brothers of the testator or their heirs, devisees, executors and administrators, and to invest and re-invest the proceeds of sale with the consent of the three brothers "or any two of them." At the death of Mrs. Pryor the stock was to be given, under the terms of the trust, to the testator's son, Charles R. Clow, Jr., hereafter Charles, Jr., "if living at the time of her death."

The plaintiffs are the widow and daughter of Charles, Jr., claiming respectively as residuary legatee under his will and as a child born after the execution of the will under the laws of Mississippi, where they were domiciled at the time of death. Their asserted rights arose out of four sales of stock made from the trust by Mrs. Pryor in 1935 and 1938. The defendants are the Company, Earle F. Johnson, an officer of the Company who allegedly participated in the sales, ten named defendants who are claimed to be transferees of the disputed shares so sold, and the Northern Trust Company as trustee under some seven trusts which contain such shares. The plaintiffs seek an adjudication of their rights in the stock and a transfer of the shares to the trust originally established under the will of Charles R. Clow, Sr.

The sales in controversy involved 2,850 shares of a total 5,250 held in the trust as the result of stock dividends increasing the number from the original 437½. They were disposed of by Mrs. Pryor in four separate transactions. In all four instances, Charles, Jr., submitted his consent to or ratification of the sale. In none of the four instances were the consents of the surviving brothers and all the heirs, devisees, executors and administrators of deceased brothers obtained, as required by the will of Charles R. Clow, Sr., as the plaintiffs construe it. In the second sale, none of the consents was obtained. In all four transactions the immediate transferee of the stock sold was the Company, but all of the sales were negotiated largely through William, Sr., as president and later chairman of the board of the Company, and the stock acquired in the last three sales was resold by the Company at the same price to William Sr., in accordance with a previous understanding.

The details of these four transactions are tabulated below:

| Date of Sale | Number of Shares | Price per Share |
|---|---|---|
| 1. Jan. 15, 1935 | 1,250 | $25 |
| 2. Dec. 24, 1935 | 500 | 30 |
| 3. April 28, 1938 | 600 | 50 |
| 4. July 1, 1938 | 500 | 50 |

After the first sale, and in November 1935, Charles, Jr., through whom these plaintiffs claim, executed an agreement with his mother, Mrs. Pryor, purporting to transfer to her all his interest in the stock in which he held a remainder, under the trust, after the death of Mrs. Pryor. The recited consideration for this assignment was a sum representing previous advancements and loans made to Charles, Jr., by Mrs. Pryor, and her promise to pay $25,000 in monthly instalments of $75. The Company was notified of the agreement and requested to transfer the stock in accordance. On the strength of this assignment, Mrs. Pryor was able to negotiate several personal loans, secured by pledges of the stock, from other sources.

Between the execution of this purported assignment and July 1940, Mrs. Pryor sold an additional 1,600 shares of the trust stock through the Company to William, Sr., in the last three of the transactions previously described. Despite the purported relinquishment of his interest, Charles, Jr., was requested to give, and did give, his consent to each of the three sales. In July 1940, Mrs. Pryor and Charles, Jr., entered into another agreement, purporting to rescind the assignment of November 1935, for failure of consideration. Pursuant to this second agreement, the Company was requested to retransfer the remaining

shares held in Mrs. Pryor's name, and numbering 2,000, so that it would appear from the corporate records that they were subject to the terms of the original testamentary trust created by Charles, Sr., without qualification by any agreement.

Charles, Jr., was killed in military service in 1943. His mother, Mrs. Pryor, survived him and is still living, In the Settlement, in a Mississippi court, of the estate of Charles, Jr., a consent decree was entered in 1953 establishing that upon the death of Charles, Jr., during the life of Mrs. Pryor, his contingent remainder in the stock held by Mrs. Pryor as trustee was extinguished, and that the beneficial interest in the stock then passed as intestate property of Charles R. Clow, Sr., one-third to the widow Mrs. Pryor, and two-thirds to the estate of the son Charles, Jr. As a part of the agreement supporting the consent decree, the plaintiffs and the executor of the estate of Charles, Jr., covenanted not to sue Mrs. Pryor upon any claims for an accounting of the proceeds of the sales of the stock.

### The Absence of Fraud or Breach of a Fiduciary Duty.

The defendants in support of their motion for summary judgment assert that the purchases by the Company from Mrs. Pryor were in all respects valid and regular and are not subject to attack. The transactions, in their view, were entered into at the instance of Mrs. Pryor and Charles, Jr., were characterized by full disclosure, and represented a charitable effort on the part of William, Sr., and the other stockholders to alleviate the financial distress of the widow of a deceased brother. But the facts can also be viewed in a light less favorable to the defendants. Assuming that all reasonable inferences would be drawn by the trier of fact in favor of the plaintiffs, the same evidence would support a finding that William, Sr., violated the fiduciary duty he bore as the result of his relation of trust and confidence with Mrs. Pryor and Charles, Jr. He was

anxious, it could be found, to increase his holdings of Company stock. As an officer, and in fact the manager, of the Company, he enjoyed a generally superior knowledge of business affairs and peculiar knowledge of the conditions of the Company. He sought the confidence of Mrs. Pryor, referring to himself in their correspondence as "trustee". He accepted the role of adviser, as the guardian of the interests of his brother's widow.

Although the defendants contest the accuracy of the inferences, it might reasonably be found that William, Sr., in violation of this relationship, misrepresented the prospects of the business in order to lower the value of the stock in Mrs. Pryor's estimation. He held back the declaration of dividends, the plaintiffs will seek to show, in order to aggravate her economic plight, suggested additional expenditures to her, and emphasized the marital difficulties of her son, Charles, Jr., to induce her to sell, either to provide funds to settle the difficulties or to put the son's interest in the stock beyond the reach of potential claimants against him. Emphasizing the representation that the Company was in poor financial condition, he reported to her that he and the other officers of the Company had accepted reductions in salary when in fact the decreases were offset by ostensible loans to them from the Company.

It might also be found that William, Sr., induced Mrs. Pryor to accept personal loans from the Company, charged to his account, and required that the obligations be secured by a pledge of the trust stock in violation of the terms of the trust, and then pressed for payment, threatening to foreclose the pledge. He attempted to conceal the fact that he was the actual purchaser in the last three sales, and to avoid what he had been advised was a fiduciary duty, by employing the Company as a conduit in the transactions. And finally it may be established that the price paid for the stock was substantially less than its fair value. Mrs. Pryor sold the stock at prices of

$25, $30, and $50 per share, during a period when the book value of the stock ranged from approximately $190 to $139 per share, and when earnings ranged from $10.72 to $25.82 a share. No dividends were paid in the years immediately preceding the first two sales, but in the two years intervening before the last two sales, dividends of $11 and $8 were paid.

On the basis of these facts and inferences, if accepted, it could be found that William, Sr., and the Company he controlled violated a fiduciary duty to Mrs. Pryor. See McCartney v. McCartney, 1956, 8 Ill.2d 494, 134 N. E.2d 789; Bremer v. Bremer, 1952, 411 Ill. 454, 104 N.E.2d 299. Since Charles, Jr., was in a real sense also a seller of the stock, as William, Sr., knew, and since Charles, Jr., also read and relied upon his uncle's representations, and reposed trust and confidence in him, the same facts would establish a violation of duty owed to him. The plaintiffs can be found to be his successors to the resulting trust in two-thirds of the reversion created by the failure of the express trust upon the death of Charles, Jr., before the life beneficiary. As holders of this interest under the trust, and upon the refusal of the trustee, Mrs. Pryor, to sue, the plaintiffs are authorized, or may properly be found to be, to assert the claim. See 3 Scott, Trusts Sec. 282.1, pp. 2146–2147 (2d Ed. 1956).

The plaintiffs have an additional ground to support their complaint. Under the will establishing the trust, Mrs. Pryor as trustee was authorized to sell the stock only with the consent of the testator's three brothers or the heirs, devisees, executors, and administrators of any of the three who had died. In the second sale, none of these consents was obtained. In the other three, the consent of the executor and sole trustee of a deceased brother was obtained, but not the consent, in addition, of his heirs. The parties disagree as to whether the omission constituted noncompliance with the requirement of the will. In the last three sales, a person whose consent was required was the actual purchaser of the stock, and in all sales the consentors, as stockholders of the Company, enjoyed a possibility of gain. In this situation, the plaintiffs argue that the power of consent subjected its holders, and particularly William, Sr., as purchaser of a majority of the stock, to a fiduciary duty that prohibited self-dealing or at least imposed an obligation of scrupulous fairness in the transaction. If the plaintiffs are right in their contention that such a fiduciary duty was imposed, the circumstances already stated, if proved and found, would justify a determination of breach of that duty.

The defendants argue, in opposition, that the requirement of consent was merely a device to keep the stock within the family, intended for the benefit of the surviving brothers as stockholders and not for the benefit of the trustee or the beneficiaries under the trust. If the defendants' contention should prove correct, no fiduciary duty would attach. The will of Charles, Sr., supplies no clear answer to this issue regarding his intent. On the plaintiffs' side is the fact that the same persons, if living, were required in substantially the same terms to consent to investments in other securities made by the trustee after the sale of Company stock; it is unlikely that this power relating to re-investment was conferred for any other purpose than to advise the widow in the handling of unfamiliar financial matters, and the similarly worded provision governing sales of Company stock might be construed as similarly intended. In addition, the by-laws of the Company required a stockholder contemplating sale to an outsider to offer his shares first to existing stockholders upon the same terms. An additional requirement of consent would contribute little to the protection of closed holding.

The defendants, on the other hand, argue that the consent requirements must have been imposed for the benefit of the holders of the consent power and not for the benefit of the trust, since if the powers were held under a

fiduciary obligation to the trust, the rule against self-dealing would tend to force sale to outsiders or to prevent sale altogether. And the defendants point out, the general conferring of the power indiscriminately upon heirs, devisees, and the like—who might be minors, widows, or others of questionable financial acumen—suggests that the testator was not relying upon the business judgment of the holders of the power to aid the widow in her handling of the trust funds.

The controversy cannot be resolved with finality on the basis of the materials before me. The testator's intent in requiring consents is a matter to be decided upon the basis of the full evidence, and in the light of consideration of all the surrounding circumstances. See 2 Scott, Trusts Sec. 185, p. 1385 (2d Ed. 1956). In the present posture of the case, it is enough to hold, as I do, that the evidence is not so clearly in the defendants' favor to make further enlightenment futile.

Whether a fiduciary duty should be derived from a confidential relationship between William, Sr., and Mrs. Pryor, or from the requirement that William, Sr., consent to sales of the stock, it may be found on full trial that the duty was broken. Nor does it matter whether Mrs. Pryor might be charged with a breach of trust either in a failure to exercise reasonable prudence to obtain a fair price for the shares or in a failure to obtain the required consents to her sale. Whether she violated the trust or was an innocent victim, the plaintiffs would have standing, as the facts appear for purposes of this motion, to maintain the suit.

*The Consents of Charles, Jr.,*—In each of the four contested transactions, Charles, Jr., as remainder beneficiary, affixed his signature to a statement that he consented to and approved the sale. The defendants claim that by so doing he waived any right to object to any irregularity in the dealings, and that, as his successors, the plaintiffs are bound by his waiver. It does not appear from the materials before the Court on this motion that Charles, Jr., had independent knowledge of the circumstances surrounding the sales. The depositions tend to show that his information was obtained from his mother, the trustee. The same breach of a fiduciary duty to her would, if established, constitute a violation of the rights of Charles, Jr., and the same misrepresentations or nondisclosure which would invalidate the sale in the first instance would vitiate any consent that Charles, Jr., might have given as a product of the breach.

The beneficiary of a trust is not bound by his consent to a breach of trust unless the consent was given with full knowledge of all the facts. Troyak v. Enos, 7 Cir., 1953, 204 F.2d 536; First National Bank of Colorado Springs v. McGuire, 7 Cir., 1950, 184 F.2d 620; White v. Sherman, 1897, 168 Ill. 589, 48 N.E. 128. The party who occupies a fiduciary position must establish his good faith and full disclosure. McCartney v. McCartney, 1956, 8 Ill.2d 494, 134 N.E.2d 789. It cannot be said on the basis of what is here produced that no reasonable trier of fact could fail to find that this burden was discharged, in other words, that on this state of the evidence in a trial a directed verdict would have to be granted on this issue in favor of the party bearing the burden of proof. Summary judgment is therefore inappropriate.

*The Assignment by Charles, Jr.*—Defendants place principal reliance upon the instrument of November 1935, by which Charles, Jr., for a recited consideration, purported to assign to Mrs. Pryor, the trustee, all his remainder interest in the stock held in the trust. Not only did this constitute a waiver of any objection to subsequent sales, in the defendants' view; it effectively terminated the trust by working a merger of the legal and equitable interests, and left Mrs. Pryor as sole owner with an unqualified power to sell as she chose. More particularly, the defendants contend that by virtue of this assignment, the failure to obtain consents as re-

quired by the will to the last three sales, of December 1935, of April 1938, and of July 1938, and any supposed fiduciary duty imposed upon William, Sr., are all rendered immaterial. The argument has force. But again the question is not sufficiently certain for summary decision. From the record made on the motion, it appears that alleged nondisclosure of William, Sr., and what might be found to be his misrepresentations, regarding the future prospects of the business could reasonably be determined to have influenced Charles, Jr., in making the transfer. In short, it might be found as a fact that Charles, Jr., sold out to his mother at a price fixed by the fraud of William, Sr. It could also be found that William, Sr., had sought to induce the relinquishment of the remainder, ostensibly to put it beyond the reach of claimants against Charles, Jr. In such a situation, the assignment would be set aside in equity. Fry v. Pence, 1931, 261 Ill.App. 218. As transferees who enjoy the benefit of this supposed wrongdoing of William, Sr., the defendants would not be in a position to object to equitable intervention.

Moreover, in 1940, this supposed assignment was rescinded by the mutual agreement of Mrs. Pryor and Charles, Jr., upon a recital that the agreed consideration had not been paid. Although such a rescission could not be permitted to prejudice the rights of persons who had in good faith acquired intervening interests, in the assigned stock, the lack of good faith charged to William, Sr., would avoid that obstacle. The instrument of rescission did not specifically refer to any interest in the stock which had then already been sold, nor to the interest of Charles, Jr., in the reversion here involved. But neither, of course, did the original assignment. The limitations upon the use of parol evidence to explain or amplify a written agreement have only an attenuated application in a case of this kind. Although it is not likely that oral testimony can clarify the intended effect of either instrument upon a reversionary interest in all like-lihood not contemplated by the parties, the opportunity to produce such testimony should not be foreclosed.

*The Covenant Not to Sue.—* In the course of settlement of the estate of Charles, Jr., in the Chancery Court for Washington County, Mississippi, a claim was asserted against Mrs. Pryor for an accounting for the proceeds of the sales of the stock here in issue. As the result of an agreement between the parties, a consent decree was entered, and these plaintiffs and the executor of the estate of Charles, Jr., W. T. Wynn, executed and delivered instruments by which they convenanted not to sue Mrs. Pryor for the proceeds of the sales. The defendants submit that these instruments constitute releases given for full satisfaction of the claim against Mrs. Pryor, and that they accordingly raise a bar, under the law of Illinois, to this proceeding against a joint tortfeasor. Assuming that Mrs. Pryor and the defendants or their predecessors can properly be regarded as joint tortfeasors, the crucial question under the Illinois decisions is "whether or not the transaction was intended as, and was in substance, a settlement and satisfaction, or merely an agreement not to sue * * *." Essington v. Parish, 7 Cir., 1947, 164 F.2d 725, 729. All the surrounding circumstances must be considered in the determination. I cannot say at this stage of the proceeding that no possible light could be cast on this intention by the testimony of the plaintiffs and Mrs. Pryor, or that the conflicting inferences available do not raise a genuine issue of fact as to whether the agreement for disposition of the Mississippi action was accepted by the plaintiffs as a full satisfaction of their claim. It is unnecessary to consider, therefore, whether the issue is governed by the law of Mississippi, where the instrument was executed and the trustee resided, or by the law of Illinois, where at least a part of the steps in the questioned transactions took place.

A related claim made on behalf of the individual defendants deserves

mention. The argument is made that, in conformity with the consent decree entered in the Mississippi action, Mrs. Pryor acquired by intestate succession upon her husband's death a one-third reversionary interest in the stock of the trust estate, alternative to the contingent remainder bequeathed to Charles, Jr. This reversion, merged with her life estate, constituted Mrs. Pryor the sole and outright owner of one-third of all the 5,250 shares in the trust, it is argued. It follows, according to this line of reasoning, that the sales of the 2,850 shares must be presumed to have been made from her own separate shares and not from the shares of which the reversion would fall to the estate of Charles, Jr. The argument, if accepted, would not dispose of the whole claim, since the largest number of shares which could be regarded as Mrs. Pryor's is 1750, leaving the sale of 1,100 from the trust unexplained. The suggestion that unauthorized sale in the first transaction may be ignored because the proceeds were invested in other stock held in the trust is without merit. Moreover, at the time of the sales complained of, Mrs. Pryor was not the sole owner of any shares; Charles, Jr., then alive, retained a remainder interest in all shares in the trust, assuming of course that the plaintiffs establish that the trust was not previously terminated by the November 1935 agreement. If, as plaintiffs' evidence can be regarded as tending to show, William, Sr., knowingly induced the sales in violation of the then-existing rights of Charles, Jr., and of Mrs. Pryor, the plaintiffs are not obliged to look solely to the trustee for redress. See Restatement, Trusts, Sec. 202, comment i (1942). People v. Barrett, 1950, 405 Ill. 188, 90 N.E.2d 94, a criminal case relied on by the defendants, does not control in an equity proceeding.

█ It follows that the motion for summary judgment on the merits of the case must be denied. A proceeding of this kind, invoking the discretionary powers of equity and presenting claims of confidential relationship and overreaching within the family, is seldom appropriate for summary disposition on the merits. Subtle questions of motive, of personality, and of conscience do not lend themselves to resolution on a cold paper record. Although the full and complete presentation by counsel provides a detailed view of the case, I would not be warranted in undertaking to resolve genuinely disputed questions of fact at this stage, over the plaintiffs' insistence upon the right to have the evidence offered orally in open court.

### Statute of Limitations and Laches

█ The defendants have also moved for summary judgment upon the ground that the action is barred by the passage of time. That the claims are stale must be conceded. Approximately twenty years elapsed between the time of the first sale called into question and the commencement of this action. Some of the participants in the transactions have long since died.

Counsel for the defendant Johnson and the Company urge that the claim is barred by the five-year limitations period imposed upon actions to recover possession of personal property by Section 16, Chapter 83, Illinois Revised Statutes 1953. The plaintiffs' claim, they argue, is either legal or within the concurrent jurisdiction of law and equity, and is therefore subject to the definite proscriptive period laid down by the statute and not to the discretionary limits of the equitable doctrine of laches. Harding v. Durand, 1891, 138 Ill. 515, 28 N.E. 948; Mattison-Greenlee Service Corp. v. Culhane, 7 Cir., 1939, 103 F.2d 608, 612.

But they concede that if the suit is exclusively equitable the statute of limitations has no application. See Bremer v. Bremer, 1952, 411 Ill. 454, 104 N.E.2d 299; McDiarmid v. McDiarmid, 1938, 368 Ill. 638, 15 N.E.2d 493. That the suit is exclusively equitable is reasonably clear. This is not a case where equity jurisdiction is invoked merely to allow a claimant to assert derivatively a legal right which the principal holder refuses to enforce, as in Overfield v. Pennroad

Corp., 3 Cir., 1944, 146 F.2d 889, and other cases relied upon. Here the plaintiffs rely upon an alleged wrong—breach of a fiduciary duty imposed either by an express trust or by the existence of a relation of trust and confidence—for which only a court of equity would give relief. The complaint does not meet the requirements of an action at law for the tort of deceit. Moreover, the defendants, as transferees who took no part in the transactions complained of, would not be subject to any claim at law. Since the predecessors of the plaintiffs transferred a voidable title, the defendants would not be subject to a legal action for tortious conversion. Finally, the interests of the plaintiffs, as beneficiaries of a resulting trust, and the relief of tracing and reestablishment of the trust are of exclusively equitable cognizance. It follows that the time limits applicable to the claim are those of laches and not of the statute of limitations.

 The interest asserted by the plaintiffs constitutes a part of a reversionary estate which will not become possessory until the death of the life tenant, Mrs. Pryor. In this state, time does not begin to run against a holder of a future interest until the interest becomes possessory. The leading Illinois case on the subject, Penn v. Fogler, 1899, 182 Ill. 76, 55 N.E. 192, still stands as authority on that proposition, although its pronouncements on the duty of diligence in cases of fraud have been largely repudiated. Ferroline Corp. v. General Aniline & Film Corp., 7 Cir., 1953, 207 F.2d 912. Other decisions recognize that no duty to sue arises until the claimant's interest becomes possessory. See Beasley v. Beasley, 1949, 404 Ill. 225, 234, 88 N.E. 2d 435; Grodsky v. Sipe, D.C.E.D.Ill. 1940, 30 F.Supp. 656, 662; King v. Richardson, 4 Cir., 1943, 136 F.2d 849.

 The defendants seek to distinguish the case at bar by pointing to the difference between wrongs committed against the trust estate by a third person without the participation of the trustee and wrongs in which the trustee is involved. If the wrong is committed by a stranger to the trust, the trustee, as the holder of full legal title, can reasonably be expected to sue, and the beneficiaries will be bound by his failure to do so, whether or not their interests have become possessory. On the other hand, if the trustee was himself involved, his interests will be adverse to the beneficiaries and they are not bound by his delay. See 3 Scott, Trusts, Secs. 327, 327.1 (1956). Here the plaintiffs do have a claim against the trustee for breach of trust in making the sales, which they have covenanted not to enforce. They are not chargeable, accordingly, with any laches of Mrs. Pryor.

 Moreover, since the trustee, Mrs. Pryor, stood in a relation of trust and confidence to William, Sr., and still appears to believe that he did no wrong, there is doubt sufficient to prevent summary judgment on the ground of laches, even if it is assumed that the plaintiffs would be barred if Mrs. Pryor were, since it cannot be said with certainty that she failed to exercise reasonable diligence in view of that relationship. See Winger v. Chicago City Bank & Trust Co., 1st Dist.1945, 325 Ill.App. 459, 60 N.E.2d 560, reversed on other grounds 394 Ill. 94, 67 N.E.2d 265.

This disposition of the question renders it unnecessary to consider the contentions of the defendants that the plaintiffs' predecessors, Charles, Jr., and his executor, W. T. Wynn, were guilty of laches, to decide how far Charles, Jr., may have borne a duty to inquire despite the confidence he reposed in his uncle, William, Sr., or to determine whether facts learned by a busy lawyer in one capacity should be charged against the interests entrusted to him by other persons and in a different capacity several years later.

Failure to Join Indispensable Parties.

In the third branch of their motions, the defendants submit that the action must be dismissed for a defect of parties. The argument is made that Mrs. Pryor, Charles R. Clow III, a son of Charles, Jr., by a previous marriage, and

W. T. Wynn, as executor of the estate of Charles, Jr., should have been joined. Their argument proceeds that the joinder would leave co-citizens on opposite sides of the litigation, destroying diversity of citizenship; accordingly, it is said, the action must be dismissed because the deficiency cannot be cured. Mrs. Pryor, it should be noted, has been joined as a party defendant only in her capacity as trustee and not personally, and has been served with process under the provisions of Section 1655 of the Judicial Code, 28 U.S.C.A., a course which subjects her to the jurisdiction of this court at most to the extent of her claims as trustee in the property involved in the suit.

Mrs. Pryor and Charles R. Clow III must be joined, it is argued, because they have or may have an interest in the stock which the plaintiffs seek to have restored to the trust. Under the Federal Rules of Civil Procedure, rule 17 et seq., a distinction is drawn between parties who are conditionally necessary, that is, persons who must be joined if they are subject to the jurisdiction of the court and may be joined without ousting the court of jurisdiction of the action, and parties who are indispensable. See 3 Moore, Federal Practice, 2206–07 (2d ed. 1948). A party is not indispensable unless relief cannot be granted between the parties already before the Court without prejudicing the rights of the absent party. Green v. Green, 7 Cir., 1954, 218 F.2d 130, 143.

"The rule is that if the merits of the cause may be determined without prejudice to the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done; and a court of equity will strain hard to reach that result. * * * [The] rule established by these authorities * * * illustrates the diligence with which courts of equity will seek a way to adjudicate the merits of a case in the absence of interested parties that cannot be brought in." Bour-

dieu v. Pacific Western Oil Co., 1936, 299 U.S. 65, at pages 70–71, 57 S.Ct. 51, at page 53, 81 L.Ed. 42.

In Meyerding v. Villaume, D.C.D. Minn.1957, 20 F.R.D. 151, the plaintiff, holder of a remainder interest under a trust, brought suit against the trustee charging wrongful sales of stock by the trustee, commingling of assets, and other wrongs, and seeking restoration of the trust property and removal of the trustee. The defendant moved to dismiss for failure to join indispensable parties, namely, the life beneficiary under the trust and other remaindermen. As here, the joinder of these parties would have destroyed complete diversity of citizenship and ousted the court of jurisdiction. The motion was denied. In the course of its opinion, the court observed:

"At the outset it may be stated dogmatically that there is no prescribed formula for deciding the question of indispensability in all cases.

"If justice to the parties before the Court can be done without injury to absent persons, the motion should not be adopted as a means to the end of divesting the Court of jurisdiction. Defendant has the burden of showing that the present alignment of the parties is inconsistent with equity and good conscience in the sense that absence may work injury. * * *

"The intricate features of the instant case, such as the claimed improper distribution of principal, need cause no anxiety for the reason that the absent remaindermen would benefit by restoration of improper or mistaken payments. The same reasoning applies to the alleged wrongful sale of stock by defendant. Relief granted in this respect would benefit the absent beneficiaries under the theory of suit. The Court can observe no clash of interest between plaintiff and the absentees under existing circumstances. The lack of standing of plaintiff to require res-

toration of income assuredly does not affect the question of indispensability of parties.

"The parties that defendant seeks to add as plaintiffs would deprive this Court of jurisdiction by their joinder. This, in my opinion, goes beyond the contemplation of the applicable rule and tests." 20 F.R.D. 151, at page 153. (Footnotes omitted.)

██ Nor is Mrs. Pryor an indispensable party in her capacity as trustee. Whether the suit is considered to be derivative, 3 Scott, Trusts, Secs. 282.1, 282.2, pp. 2146–2147, 2148 (2d Ed. 1956), or against the defendants for their predecessors' participation in a breach of trust, 3 Scott, Trusts, Secs. 294.1, 295, pp. 2201, 2207 (2d Ed. 1956), the trustee is only conditionally necessary, and not an indispensable party.

██ In support of their attempt to require the joinder of W. T. Wynn, executor of the estate of Charles, Jr., defendants argue that at the time of commencement of this suit he was still the holder of the claims here asserted. The effect of the argument is that Mr. Wynn was the real party in interest. But in a written instrument dated September 18, 1956, more than a year after the suit had been commenced on June 27, 1955, Mr. Wynn recited that he had "on or prior to May 18, 1955" transferred the claim to these plaintiffs. Whether this writing was an afterthought as defendants argue is immaterial. No formal requisites are necessary under the law of Mississippi to a transfer of a chose in action from the personal representative to the appropriate distributee, where as here the time for filing claims had passed and the debts of the estate had been paid. See Hall v. Hall, 1854, 27 Miss. 458, 460; Ricks v. Hilliard, 1871, 45 Miss. 359, 362. Since there is no dispute that these plaintiffs are the proper persons to receive the claims from the estate under the consent decree, or that they, and not Mr. Wynn, are entitled to its benefits, dismissal now would serve only the empty formality of requiring the same plaintiffs to commence the same suit all over again. If it is assumed that the commencement of the proceeding was technically defective, it does not appear that the defendants have suffered as a result.

The motions of the defendants will accordingly be denied in all their branches.

### The Motion to Strike the Affidavits of Wynn and Hafter

██ The defendants have filed an additional motion that remains to be ruled upon. In opposition to the defendants' motions previously considered, the plaintiffs filed the affidavits of W. T. Wynn and Jerome S. Hafter, attorneys who had represented Mrs. Pryor and Charles, Jr., in some of the dealings here in issue, and whose firm is serving as co-counsel in this action. The defendants have moved to strike these affidavits for failure to comply with the requirements of Rule 56(e), Federal Rules of Civil Procedure, that such affidavits "shall be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence." Memoranda of law in support of the motion, in opposition, and in reply have been presented. The defendants point out that in considerable part the statements in the affidavits would not be admissible in evidence, either because the attorneys would be disqualified from testifying by virtue of a contingent fee arrangement, under the so-called dead man's statute, Ill.Rev.Stat. 1955, c. 51, § 2, or because the recitals violate the rules excluding hearsay and opinion. In large part the objections are well taken. The appropriate remedy for such defects, however, is ordinarily to disregard the improper portions of the affidavits, and not to strike the whole. See Dickheiser v. Pennsylvania R. Co., D.C.E.D.Pa.1945, 5 F.R.D. 5. This I have done. In view of the numerous exhibits, stipulated to be genuine, which had been properly presented, the motions were considered without reference to the inadmissible portions of these affidavits. The only parts of the affidavits relied up-

on in these rulings was the paragraph numbered 8 of Mr. Wynn's affidavit describing the assignment of the claims sued upon by him as executor to the plaintiffs. Since the motions to which the affidavits are directed have been disposed of, there is nothing to be gained in requiring the affiants to redraw their affidavits.

Motion to strike affidavits denied.