Linda Jane Biggar VOGT and James William Biggar, Appellants,

v.

Marjorie Bowman MILLER, Dexter Bowman Mead and William J. Mead et al., Appellees.

No. 63018.

Supreme Court of Iowa.

Nov. 14, 1979.

Lennis J. Holm of Anderson, Werner & Holm, Creston, and Gordon K. Darling of Darling & Chickering, Winterset, for appellants.

Len G. Leonard, Corning, and Robert F. Leonard, Sidney, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and LARSON, JJ.

REYNOLDSON, Chief Justice.

This appeal arises out of an action to quiet title to an undivided one-fourth interest in 720 acres of land in Adams County. Trial court, denying the petition of plaintiff Linda Jane Biggar Vogt to quiet this interest in her, decreed the disputed interest was owned by defendants Miller and Mead.

The persons now interested in this real estate are grandchildren of Joseph Drennan who died November 7, 1935, sole owner of this property and several Canadian tracts. Drennan was survived by his wife Malinda and four adult daughters: Effie E. Akin (mother of J. D. Akin and Eleanor Waugh), Myrtle M. Drennan (unmarried and childless), Grace D. Biggar (mother of plaintiffs Linda Jane Biggar Vogt and James William Biggar), and Carrie Bowman (mother of defendants Marjorie [now Mardi] Bowman Miller and Dexter Bowman Mead). Two provisions in Drennan's will sparked this controversy:

> Item 2. I hereby will and devise to my wife Malinda E. Drennan, a life interest in and to all of the real estate of which I may die seized and possessed and it is my will that at her death, or at my death should I survive her, said real estate shall go absolutely to my three daughters, Myrtle M. Drennan, Effie E. Akin and Grace D. Biggar, in the following shares, a one fourth interest to Myrtle M. Drennan, one fourth share to Effie E. Akin and a one half share to Grace D. Biggar. The provision made in this will for my wife Malinda E. Drenna[n], is made in lieu of her dower right.

> Item 3. It is my suggestion, but this suggestion is not binding, that my daughter Grace D. Biggar, after she comes into possession of her one half interest in the real estate above willed to her, give to my daughter, Carrie B. Bowman, one half of any income that she may received [*sic*] from her interest in said land and should she at any time wish to make a conveyance to the said Carrie B. Bowman, of a one fourth interest in said land, said action would meet my approval.

November 22, 1935, Grace D. Biggar and her husband J. W. Biggar signed a memorandum of agreement in which she agreed "that as she receives property of any kind and description by and under the will of Joseph Drennan, deceased, that she agrees to assign, transfer and convey by special warranty deed, or quit claim deed, to the said F. O. Akin [sister Effie's husband], Trustee, one-half of the property that she receives from the said estate." F. O. Akin was given the discretion to convey to Carrie Bowman all or any part of the "trust fund" at any time, or to retain the fund. Grace was to receive an annual accounting from Akin and the agreement further provided that Akin would reconvey the property to Grace upon her demand. A copy of this agreement was found among Carrie's effects after her death. At trial Mead testified without objection that her "Aunt Grace told me that she was to give part of that to my mother, the estate, to my mother" and that "she [Grace] was merely holding this [share]" for her mother. The evidence does not clarify whether these conversations took place before the agreement was executed.

The Iowa 720 acres have been managed as a unit since Drennan's death. F. O. Akin served as manager until his death in 1957; his son Donald followed him in this capacity. Annual distributions were made as hereinafter indicated.

The surviving spouse and life tenant, Malinda, died November 27, 1948. She was preceded in death by Grace D. Biggar, who died intestate September 6, 1948. Grace was survived by her husband and their two adopted children, plaintiffs Linda Jane Biggar [Vogt], then age 8, and James William Biggar, then age 10.

On or about January 26, 1949, J. W. Biggar resigned as administrator of Grace's estate, quitclaimed his interest in the 720 acres to plaintiffs, and applied for appointment of Effie [E.] Akin as guardian of the person and property of his two children. This appointment was made the following day. Effie was also appointed administratrix of Grace's estate. She filed an estate

inventory scheduling only a one-fourth interest in the 720 acres of Iowa land.

October 5, 1949, Effie as administratrix filed an "Application to Convey Property" respecting the disputed one-fourth interest in the 720 acres (and other real and personal property), alleging that the property was not a part of the assets of Grace's estate, but was held "in trust for Carrie D. Bowman," said trust being "an oral one and voluntary in nature, and [which] arose by reason of the terms and provisions of the last will and testament of Joseph Drennan." The application sought authority to convey the one-fourth interest to Effie's husband, F. O. Akin. He was alleged to be "designated as the person to take and hold the legal title to all of said property for the benefit of the said Carrie D. Bowman" by agreement of all the interested parties. An ex parte court order was entered the same day. It authorized the requested conveyance and purported to approve "the deeds make [sic, made] by her conveying said real estate to said F. O. Akin."

No such deed or deeds were ever recorded. Three years later, on September 4, 1952, a similar proceeding was instituted. This "Amendment to Application" recited that after the prior order was entered "a settlement of all matters involved in the matter of said property of said Carrie D. Bowman [had been reached] and it is now desired to convey said property directly to her." On the same day the court entered another order which rescinded the 1949 order and the approval of deeds therein contained, authorized Effie as administratrix to convey the property to Carrie, and approved a deed presented by Effie transferring title to Carrie.

Again no such deed appeared in the record. However, on March 22, 1961, a "Court Officer Deed" was recorded. This deed, conveying an undivided one-fourth interest in the 720 acres to Carrie, was executed by Effie as administratrix of Grace's estate. It was dated September 4, 1952, and was notarized as of the same date by Lee Watts, a Corning attorney now deceased. However, this deed was drawn on an Iowa State Bar Association form which did not exist until 1956. Based upon letters in the record between Watts as attorney for Effie Akin, Administratrix, and A. P. Madgett as attorney for Carrie Bowman, trial court found that the dates on the court officer deed were made to correspond with the original conveyance which could not be located, and that the deed was not fraudulent. Trial court noted plaintiffs' recast petition "does not allege fraud of any kind by any person."

Several of the Canadian tracts were not sold until after Grace's death. Effie as administratrix executed transfers and another instrument which indicated Grace died owning an undivided one-half interest in these properties. Trial court found that although these documents did not "square" with Effie's final report in Grace's estate, the trust probably was ignored in the Canadian transactions to avoid title complications there. The court found indications of the distribution from the Canadian land sales generated an inference which supported the trust arrangement.

In 1952 Drennan's unmarried daughter Myrtle died intestate. Her one-fourth interest in the 720 acres passed one-third to Effie, one-third to Carrie, and one-third to plaintiffs (as children of the deceased sister Grace).

November 27, 1959, Effie by gift conveyed her one-third interest (one-fourth interest from Joseph Drennan's will and one-twelfth interest through Myrtle) to her two children, J. D. Akin and Eleanor Waugh. These children are not parties to this suit.

March 1, 1961, Carrie Bowman conveyed "an undivided one-third interest" in the 720 acres to her children, defendants Mead and Miller. Plaintiffs challenge this conveyance, claiming that Carrie's only interest in the property was her one-twelfth interest received through intestate succession from her deceased sister Myrtle. This warranty deed was recorded in Adams County, Iowa, September 30, 1961.

After Grace's death plaintiffs James and Linda made their home with their father, J. W. Biggar, until his death in 1951. After

staying in the Biggar home with a housekeeper until 1953 they joined the F. O. and Effie Akin family until they reached maturity. Plaintiff Linda remained with the Akins until she completed four years of college education and considered it her home until she married following one year of teaching.

July 16, 1963, plaintiff James William Biggar conveyed "all my right, title and interest in and to" the 720 acres to his sister, Vogt, in exchange for her conveyance of certain realty derived from the estate of their father, J. W. Biggar. Thus James claims no present interest in this real estate. His only apparent interest in this litigation surfaces in an allegation of the petition which alleged the plaintiffs were entitled to an accounting of past rents and profits from an undivided one-fourth interest in the subject property.

Plaintiff Vogt testified the distributions she received were one-third of what were asserted to be the net profits of the Drennan farms. She stated her husband first aroused her suspicion she was entitled to a greater share after he investigated the estate papers in the courthouse in 1977.

Thus on one side of this controversy is plaintiff Vogt as successor in interest to Drennan's daughter Grace, who was willed the additional one-fourth share with the suggestion she might give the income from this share to her sister Carrie and the inference an ultimate conveyance of this share to Carrie would meet the testator's "approval." On the other side are defendants Mead and Miller, Carrie's daughters. At stake is the present ownership of that one-fourth share.

Trial court concluded, on the basis of the above and other evidence, that (1) "Grace's recognition of her position as a trustee for Carrie" should be enforced and was not violative of section 557.10, The Code; (2) title to the disputed undivided one-fourth interest in the 720 acres had been established in Carrie Bowman and her grantees, the defendants Mead and Miller, by adverse possession; and (3) the defense of laches should be sustained.

Appealing, plaintiffs assert these holdings were erroneous. We find it necessary to treat only the first two contentions.

I. *Was there an enforceable trust?*

Trial court found the evidence to be "clear, satisfactory and convincing that the family members, and particularly Grace, entertained no intention of depriving Carrie of the farm share her father wanted her to have but that for reasons known to him he could not devise to her." Trial court elsewhere noted it could be suspected financial stress facing Carrie and her spouse could have been the reason for Drennan's ambivalent will.

Trial court had before it Grace's statement to Mead she was holding the share for Carrie, coupled with the 1935 agreement signed by Grace and her husband which the court deemed a written recognition of the trust obligation. While that instrument is subject to several interpretations, its overall thrust is to appoint F. O. Akin agent and successor trustee, and it apparently was designed to protect Carrie's share from creditors. Because the trust was "memorialized in writing" and unrepudiated in her lifetime, trial court held there was no violation of section 557.10, The Code 1977 (creation of trusts in real estate must be executed in the same manner as deeds), relying on *Andrew v. State Bank of Blairsburg,* 209 Iowa 1149, 1152, 229 N.W. 819, 820 (1930), and *Albright v. Albright,* 153 Iowa 397, 133 N.W. 727 (1911).

In *Butler v. Butler,* 253 Iowa 1084, 1113, 114 N.W.2d 595, 612 (1962), we held:

> The facts and circumstances surrounding the transaction, [a] statement of intentions by one of [the] settlors, conduct and actions of the parties, especially the donee . . . all taken together [can] establish the existence of a trust relationship.

All the evidence taken together, including the agreement, and giving efficacy "to the situation and relation of the parties, the nature and situation of the property, and the purposes or objects which the settlor had in view," indicates Grace probably in-

tended to create a trust. *Id.* at 1114, 114 N.W.2d at 612 (quoting I. J. Perry, *A Treatise on the Law of Trusts and Trustees* § 99, at 124 (7th ed. R. Baldes 1929) ). Under Drennan's will she held an additional one-fourth undivided vested remainder interest in the farm which obviously was the subject of the later agreement. Of course she was aware of the will and her ownership when the agreement was executed. It apparently contemplated, however, conveyances to Carrie or Akin when the life estate terminated, but Grace predeceased the life tenant. Whether the agreement itself could be considered a part performance in order to avoid the statute of frauds is a question we need not reach as the district court's decree may be sustained on the ground examined in division II. However, *see Butler*, where, quoting from *McDiarmid v. McDiarmid*, 368 Ill. 638, 642, 15 N.E.2d 493, 495 (1938), we stated:

> [T]he statute of frauds has been complied with if the *trustee* makes a memorandum or writing showing that the property *is* held in trust. *The details and terms of the trust may be established aliunde and even by parol evidence.* . . . The writing need not be an instrument expressly framed for the purpose of acknowledging the trust. *It is sufficient if the recognition or admission of the trust be incidentally made in the course of correspondence, and almost any memorandum will suffice.* The letter or memorandum need not be addressed to the cestui que trust and may be written *after* title has been acquired by the trustee.

*Butler*, 253 Iowa at 1114, 114 N.W.2d at 612 (emphasis supplied and in original).

■ *See also* 89 C.J.S. *Trusts* § 38, at 765 (1955), which provides:

> The writing declaring or manifesting the existence of the trust need not be executed contemporaneously with the transfer of the legal title and the creation of the trust, but may be executed *subsequent* thereto.

(Emphasis added.) *Accord*, 37 C.J.S. *Statute of Frauds* § 171a, at 647 (1943) ("The memorandum required by the statute of frauds may be made at the time of, or subsequently to, the making of the contract, and at any time before action is brought.").

We thus turn to the issue whether title was established by adverse possession.

II. *Was title in the disputed interest established by adverse possession?*

Defendants asserted in district court their adverse possession claim to this real estate was supported by sections 614.1(5) and 614.-17, The Code 1977.

■ Section 614.17 provides a special limitation upon actions "based upon any claim arising or existing prior to January 1, 1960, . . . either at law or in equity . . . to recover any real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, against the holder of the record title . . ." when the record holder or his remote grantors are shown of record to have held chain of title since January 1, 1960. While the lost deed to Carrie and the replacement conveyance were dated September 4, 1952, the latter instrument was not recorded until March 22, 1961. Carrie did not deed her interest to defendants Mead and Miller until March 1, 1961, and this deed was not recorded until September 30, 1961. Trial court rightly found Carrie took nothing by Drennan's will and did not obtain title by virtue of the September 4, 1952, ex parte court order. It was correct in holding Carrie did not become a record owner until after January 1, 1960, and therefore section 614.17 was not available to aid these defendants.

Section 614.1(5) relevantly provides:

> Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:
>
> 5. . . . those brought for the recovery of real property, within ten years.

Principles controlling adverse possession under this section were recently set out in *I–80 Associates, Inc. v. Chicago, Rock Island and Pacific Railroad*, 224 N.W.2d 8, 10 (Iowa 1974), and will not be repeated here.

Trial court confronted the question whether the doctrine of adverse possession is available to establish ownership of an undivided interest as against a cotenant claiming such interest, when both hold uncontested fractional interests and possession of the farm. Trial court held that it was, relying on *Blankenhorn v. Lenox*, 123 Iowa 67, 98 N.W. 556 (1904). *But see Shives v. Niewoehner*, 191 N.W.2d 633, 635–36 (Iowa 1971). However, Vogt posits no error on this ground, instead asserting (1) section 614.22 and not 614.1(5) is applicable in this situation, and (2) in any event, the nonresidence of Carrie and her daughters and grantees, the defendants Mead and Miller, tolled the running of the section 614.1(5) limitation.

Section 614.22 provides no action shall be maintained to set aside, cancel, annul, or invalidate any of an enumerated list of official deeds, including administrator's deeds, if recorded prior to January 1, 1960, unless action shall be commenced prior to January 1, 1971. Vogt argues here for the first time that this special limitation provision controls over the general 614.1(5) provision, and because Effie's court officer deed was not recorded until after the 1960 cutoff, the limitation period for her action has not yet run.

■ Vogt cites no authority for the above rationale and we find it unpersuasive. Her action is not cast as one "to set aside, cancel, annul, declare void or invalid, or to redeem" any conveyance. It is more accurately termed an "action based upon a claim [under Drennan's will] arising or existing prior to January 1, 1960, . . . to recover or establish any interest [in real estate] . . ." within the scope of section 614.17. Therefore section 614.22 has no application here.

A closer question is presented by Vogt's contention the section 614.1(5) ten-year limitation on her action does not apply because defendants Mead and Miller and their mother Carrie were nonresidents. The evidence fully supported trial court's finding that Carrie was not a resident of Iowa after some undisclosed date in the 1950's, and Mead and Miller were nonresidents of Iowa after 1937.

With respect to the section 614.1(5) limitation, section 614.6 provides the period shall be computed omitting the time the defendant "is a nonresident of the state."

A century ago, in *Gillett v. Hill*, 32 Iowa 220, 223 (1871), this court held the nonresidence of a defendant would operate to defeat the bar of a statute of limitations. *See also O'Dell v. Browning*, 182 Iowa 223, 226, 165 N.W. 395, 396 (1917) (statute of limitations not available to nonresident defendant in quiet title action); *Stern v. Selleck*, 136 Iowa 291, 295, 111 N.W. 451, 452 (1907) (statute of limitations will not run during defendant's nonresidence, although defendants were in possession by tenants); *Weaver v. Carpenter*, 42 Iowa 343, 349 (1876) (statute will not run in favor of nonresident defendants in action to set aside deed); *Heaton v. Fryberger*, 38 Iowa 185, 196–97 (1874) (statute will not run during defendant's nonresidence although tenant was in possession). More recently, we stated in *Jennings v. Schmitz*, 237 Iowa 580, 588, 20 N.W.2d 897, 902 (1945):

> The fact that proceedings in rem might have been instituted against property of the [defendants] in this state does not render the saving clause found in 11013 [now section 614.6, The Code 1977] inapplicable. We have so held several times and our holdings accord with the great weight of authority. Had the legislature intended that section 11013 would not be operative where a defendant has property in this state or where a proceeding in rem might be brought, we must assume the statute would have so provided. Section 11013 contains no such exception. It is a saving clause based on nonresidence of the defendant, and not on absence of property in this state.

In recent years, several states have reached the opposite position when faced with this question. *See, e. g., Ridgway v. Salrin*, 41 Cal.App.2d 50, 55–57, 105 P.2d 1024, 1027–28 (1940) (mortgage foreclosure); *Fastenau v. Asher*, 124 Colo. 161, 169, 235 P.2d 587, 592 (1951) (quiet title

action); *In re Estate of Patrick*, 179 Kan. 507, 511–12, 297 P.2d 201, 205 (1956) (action to vitiate administrator's deed); *King v. Childress*, 232 Miss. 766, 773, 100 So.2d 578, 580–81 (1958) (action to cancel mineral conveyance); *Brainard v. Hall*, 137 Neb. 491, 494, 289 N.W. 845, 846 (1940) (statute provided that absence from state did not extend period for actions in rem); *Moss v. Standard Drug Co.*, 159 Ohio St. 464, 470–72, 112 N.E.2d 542, 545–46 (1953) (dicta: not tolled with respect to true actions in rem); *Crandall v. Irwin*, 139 Ohio St. 253, 258–59, 39 N.E.2d 608, 611 (1942) (foreclosure of mechanic's lien, because action in rem); *Kanuebbe v. McCuistion*, 168 Okla. 165, 168, 33 P.2d 1088, 1090 (1934) (suit to recover interest in land; nonresidency bar not applicable " 'where relief may be given without personal service of process upon the defendant' "); *Akers v. Gillentine*, 33 Tenn. App. 212, 217, 231 S.W.2d 372, 374 (1950) (action to set aside deed as fraudulent conveyance). *See generally* Annot., 119 A.L.R. 331, 332–33, 365–69 (1939).

In the circumstances of this case, trial court did not apply the holding in the above Iowa cases but applied the "inescapability from service" test of *Kokenge v. Holthaus*, 243 Iowa 571, 52 N.W.2d 711 (1952). *Kokenge* held a nonresident defendant who was at all times subject to the jurisdiction of Iowa courts under the Iowa Nonresident Motor Service Act was not within the purview of section 614.6, and thus the limitation statute was not tolled by his nonresidency. *Id.* at 574, 52 N.W.2d at 712. The *Kokenge* court traced the applicable rationale through cases back to *Penley v. Waterhouse*, 1 Iowa 498 (1856), where this court, construing a section 614.6 predecessor statute in light of its object and legislative intent, held that the statute tolling the limitations provision applied only where the plaintiff's power to secure such service as would support a personal judgment against defendant was suspended by the latter's absence. The "inescapability from service" test was more recently reapplied in *Fulmer v. Debel*, 216 N.W.2d 789 (Iowa 1974).

The one-count petition in this case alleges plaintiffs are entitled to an accounting in this or another action. The prayer asks for "other and further equitable relief." The accounting claim is the only apparent reason plaintiff James William Biggar is a party to this action. Trial court found Mead and Miller after 1961 and Carrie for many years before had a resident agent (the Akins) managing their farm interest and making distributions of income, and concluded jurisdiction to render personal judgment against defendants could have been obtained at all times by service upon their farm agent pursuant to Iowa R.Civ.P. 56.1(g). *See Goodman v. Henry L. Doherty & Co.*, 218 Iowa 529, 255 N.W. 667 (1934), *aff'd*, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935).

We hold trial court was right. In this situation the most plaintiffs were entitled to from defendants Mead and Miller, under any theory, was an accounting for the profits from the controverted one-fourth interest, a decree quieting title to this interest in plaintiff Vogt, and judgment for costs. An action for such relief could have been maintained at all times, against either Carrie or Mead and Miller, by filing the same petition filed here, with service on defendants through the resident farm agent, and under Iowa R.Civ.P. 60 or its antecedent statutes. The "inescapability from service" test applied to negate the section 614.6 tolling statute. Vogt's action is barred by section 614.1(5) and title to the controverted one-fourth interest was properly quieted in defendants Mead and Miller.

Accordingly, the judgment entered below is affirmed.

AFFIRMED.