*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARLON ANTHONY BURNS,

        Defendant-Appellant.

UNPUBLISHED
June 27, 2019

No. 342712
Genesee Circuit Court
LC No. 16-039193-FC

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Defendant, Marlon Anthony Burns, appeals by right his jury trial convictions of eight counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (personal injury); and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(f) (personal injury). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12(1)(a), to 600 to 900 months' imprisonment for each of the CSC-I convictions and 228 to 600 months' imprisonment for the CSC-II conviction. We affirm.

## I. BACKGROUND

Defendant's convictions arise out of a violent sexual assault that he perpetrated on the victim, a 64-year-old woman who was alone in her home on the evening of the assault. Defendant was the boyfriend of the victim's landlord. The victim offered detailed testimony about how defendant entered her home and sexually assaulted and physically battered her over the course of several hours. She then disclosed the assault to her pastor at church on the following morning, and a sexual assault nurse examiner conducted an examination of her later that day. The examination corroborated the victim's testimony that she sustained bodily injuries during the assault.

## II. OTHER-ACTS EVIDENCE

Defendant argues that the trial court erred in admitting other-acts evidence of two previous assaults that he perpetrated against women more than 20 years before the assault in this case. We disagree.

-1-

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo . . . ." *Id*. Necessarily, a trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law. *Id*. Before trial, the prosecution filed a notice of intent to introduce the testimonies of HW and FT, who proposed to testify about assaults that defendant perpetrated against them. The assaults occurred in 1989 and 1991 respectively. The trial court admitted the evidence to show common method or scheme and absence of mistake or accident.

At trial, HW testified that one evening in May 1989, she was home alone when her friend and defendant stopped by her home. The friend had to leave, but defendant stayed at the house. Later that evening, defendant attempted to remove HW's clothing, but she resisted him. HW testified that defendant then forcibly removed her clothing, pinned her down, and raped her. HW testified that defendant hit her in the face, put his hands around her throat, and threatened to break her neck. Defendant hit HW's face so hard that she still had a crooked nose from the assault. HW had a black eye, marks on her neck, and bruises on her ears.

FT testified that in January 1991 she lived in a rooming house with defendant. One night when she was home alone, she saw someone outside her window. She heard a man say, "I want the bitch." Defendant then kicked in her bedroom door and struck her face with a steel pipe. FT attempted to escape by running outside onto the street. However, defendant caught her from behind by the hair and forced her back into the home. Defendant stated, "I'm going to kill you." Defendant forced FT into his upper bedroom and started "ripping" her clothes off when a police officer knocked on the exterior door. FT was able to alert the police officer to her presence.

Generally, other-acts evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). However, evidence of other bad acts may be admissible to show "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident." MRE 404(b)(1). "Before other-acts evidence may be introduced, the prosecution must satisfy a three-part test: (a) there must be a reason for its admission other than to show character or propensity, (b) it must be relevant, and (c) the danger of undue prejudice cannot substantially outweigh its probative value. . . ." *People v McGhee*, 268 Mich App 600, 609; 709 NW2d 595 (2005); see also *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994). Additionally, "the trial court, upon request, may provide a limiting instruction under [MRE 105]." *VanderVliet*, 444 Mich at 75. The question is not whether the evidence falls within an exception to a supposed rule of exclusion, but rather whether the "evidence [is] in any way relevant to a fact in issue" other than by showing mere propensity. *Id*. at 64 (internal citations omitted). "Put simply, the rule is inclusionary rather than exclusionary." *Id*. (quotation marks and citation omitted).

## A. PROPER PURPOSE

Under the first prong of the 404(b) analysis, the prosecution must articulate a proper noncharacter purpose for admission of a defendant's other acts. *People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017). However, "merely *reciting* a proper purpose does not actually

demonstrate the *existence* of a proper purpose for the particular other-acts evidence at issue and does not automatically render the evidence admissible." *Id*. at 400. "Rather, in order to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court must closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test." *Id*.

In this case, the other-acts evidence was offered for a proper noncharacter purpose. Defendant denied to police that he went to the victim's home on the evening of the assault and he denied that he had sexual contact with her. The prosecution had the burden of proving that defendant went to the victim's home, sexually assaulted the victim, and caused the victim to suffer an injury to her person. The other-acts evidence was offered to show that defendant committed the charged offense because it was probative to show that he acted according to a common plan or scheme where he would use his prior contacts to gain access to vulnerable women before he sexually assaulted and physically battered the women. This was probative of whether defendant committed the offense in this case in that it tended to disprove defendant's assertions that he did not sexually assault the victim.

## B. LOGICAL RELEVANCE

Logical relevance is the " 'touchstone' of the admissibility of prior acts evidence [and] is determined by the application of Rules [MRE] 401 and 402." *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Denson*, 500 Mich at 401. A fact is "material" if it is "of consequence" to the action at hand. *Crawford*, 458 Mich at 388-389. Evidence is probative if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *Crawford*, 458 Mich at 389-390. "In the context of prior acts evidence . . . the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime." *Id*. at 390.

With respect to evidence of a common plan or scheme, the Michigan Supreme Court has explained that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000). There "must be, not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." *Id*. at 64-65 (quotation marks and citation omitted) (emphasis omitted). The evidence "needs only to support the inference that the defendant employed the common plan in committing the charged offense." *People v Hine*, 467 Mich 242, 253; 650 NW2d 659 (2002). However, "distinctive and unusual features are not required to establish the existence of a common design or plan." *Id*. at 252-253. Moreover, "[t]he remoteness of an act only affects the weight of the evidence rather than its admissibility." *McGhee*, 268 Mich App at 611-612.

The trial court did not abuse its discretion in holding that the other-acts evidence was admissible under MRE 404(b) to show that defendant acted according to a common plan or scheme. Although there were dissimilarities, the three assaults shared common features beyond

similarity as mere assaults that would permit the inference that defendant acted according to a common plan or scheme. In all three instances, defendant preyed on a female victim who was vulnerable. Defendant waited until all three victims were isolated and unable to obtain assistance before he assaulted them. In all three instances, defendant gained some familiarity or acquaintanceship with the victims prior to assaulting them. Defendant used a mutual acquaintance to gain access to HW and the victim in this case, and in both those cases, defendant sexually penetrated the victim after the victim resisted his initial physical advances. In FT's case, defendant became familiar with his victim because he was her upstairs neighbor, and she also resisted his advances. In all three assaults, defendant forcibly removed the victims' clothing, hit the victims in the face, physically battered the victims, and threatened to kill the victims. All three assaults occurred in the late evening or at night. In all three cases, defendant took periodic breaks, leaving each victim unrestrained in another room. Defendant's predilection focused on his contemporaries. In each case, defendant targeted victims approximately his own age at the time of each offense, as opposed to targeting teenagers or young women specifically. These commonalities supported the inference that defendant employed a common plan or scheme to gain access to familiar female victims, wait until the victims were isolated and vulnerable, and then perpetrate a violent sexual assault upon the victims when they resisted his advances. This, in turn, was relevant to show the absence of mistake or accident.

Defendant notes the dissimilarities between the charged offense and the other-acts evidence. While there were some differences, the similarities were sufficient to show a "striking similarity" between the charged and uncharged acts. *Denson*, 500 Mich. at 403. Accordingly, we cannot conclude that the trial court abused its discretion. *Sabin (After Remand)*, 463 Mich at 55-56. In short, the trial court did not abuse its discretion in concluding that the other-acts evidence was logically relevant to show a common plan, scheme, or system, and to show absence of mistake under MRE 404(b).

## C. MRE 403

In addition to being logically relevant, the probative value of the other-acts evidence was not "substantially outweighed by the danger of unfair prejudice" for purposes of MRE 403.

MRE 403 provides that admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "The 'unfair prejudice' language of MRE 403 refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (some quotation marks and citations omitted). "Moreover, admission of [e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. (quotation marks and citation omitted; alteration in original).

The other-acts evidence was highly probative. Apart from the victim, there were no other witnesses. The victim's credibility, therefore, was critical to proving the charged offense. The other-acts evidence was relevant to show that defendant assaulted the victim according to a common plan, scheme, or system where he isolated vulnerable female victims, of which he had some familiarity, before violently attacking and sexually assaulting the victims. This in turn

supported that the victim was credible when she testified that defendant violently assaulted her. Moreover, there was other evidence that supported defendant's guilt, which limited the danger that the jury would place undue weight on the other-acts evidence. See *id*. Finally, the trial court minimized the danger of unfair prejudice when it instructed the jury to consider the other-acts evidence only for a proper purpose and not to consider it as evidence of bad character. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) (noting that "[j]urors are presumed to follow their instructions . . .").

Defendant argues that the other acts occurred long before the charged offense in this case. However, "[t]he remoteness of an act only affects the weight of the evidence rather than its admissibility." *McGhee*, 268 Mich App at 611-612. In this case, although there was a time gap between the assaults, this Court has previously held that a 20-year gap between charged and uncharged conduct did render other-acts evidence inadmissible. See *People v Knapp*, 244 Mich App 361, 380; 624 NW2d 227 (2001). The jury was free to weigh the time gap as it saw fit.

In sum, the trial court did not abuse its discretion in admitting the other-acts evidence under MRE 404(b).

## III. ADOPTIVE ADMISSIONS

Next, defendant argues that the trial court erred in admitting statements that his girlfriend Lasenette Richardson made during recorded telephone conversations with defendant following his arrest. We agree as to the admission of some of the statements, but conclude that the errors did not affect defendant's substantial rights.

Defendant argues that the statements were erroneously admitted as adoptive admissions. Defendant failed to preserve this issue for review by objecting on the same basis in the trial court. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). As previously noted, we review a trial court's evidentiary rulings for an abuse of discretion. See *Bynum*, 496 Mich at 623. Unpreserved evidentiary issues are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

Before trial, the trial court granted the prosecution's motion in limine to admit recordings of jail telephone conversations between defendant and Richardson as "adoptive admissions." During the recorded conversations, defendant discussed sending letters and the police report to Richardson. On one of the recordings, Richardson accused defendant of cheating and having sex outside their relationship. Richardson stated that some of the sexual acts alleged in the police report were acts that Richardson and defendant engaged in during their relationship. Richardson asked defendant how "she," i.e., the victim, would have known what sexual acts defendant liked to engage in. Defendant denied that he cheated on Richardson, stated that he did not want to spend the time arguing, and at times did not respond to Richardson's accusations. At one point, Richardson asked defendant "how would she know that you like sucking feet?" Defendant

responded "that's what you think," and "you're not the only one who likes having their toes sucked."

During closing argument, the prosecutor referred to the recording. The prosecutor argued that the telephone calls showed that Richardson "did stand behind [defendant]" and that she "received her instructions from him in the mail." The prosecutor also argued that the recordings showed defendant's consciousness of guilt in that they showed the defendant was aware Richardson made statements to police and that he sent Richardson letters and provided her "instructions." The prosecutor argued that defendant's statements were "admissions" and "adoptive admissions," and defined an adoptive admission as "it's not an affirmative statement of admitting some facts, but it's when somebody else says something to you, and if those facts weren't true you would—you would be expected to denial [sic]. You would be expected to respond in such a way. And that becomes an adoptive admission." The prosecutor argued as follows:

> So also what we have in these calls. Because after Lasenette Richardson reads those police reports she says, "Yeah, I read 'em, and you know what, you had sex with her." And then his response to that is, "No, they don't have anything on me," . . . And her response to that is . . . "I'm talking about you and me, you messed around on me." And they go on . . . "You had sex outside our marriage" . . . And the defendant, "Well how do you know that?" "Because everything she said you did to her is what we have done," basically. That's how she knows. She read [the victim's] statements in those police reports and that's how she knows that the defendant has in fact had sex with [the victim] . . . and she gets more specific. "How would she know that you like sucking feet, that was our personal thing." *The defendant's response, not I didn't suck her feet, she's lying, I didn't do any such thing. No,* "You're not the only one who likes to have their toes sucked." The defendant's admissions tell you that he did to [the victim] everything she said he did. [Emphasis added.]

In general, absent an exception, hearsay statements are inadmissible at trial. See MRE 802. Some out-of-court statements are not considered hearsay. Specifically, MRE 801(d) defines statements that are not considered hearsay, and it provides in relevant part as follows:

> (2) *Admission by Party-Opponent.* The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . or (B) a statement of which the party has manifested an adoption or belief in its truth . . . .

In this case, defendant made statements during the recorded telephone conversations. These statements were admissible under MRE 801(d)(2)(A) in that they were defendant's own statements made in his individual capacity and they were relevant under MRE 401. Indeed, defense counsel conceded that defendant's statements were admissible under MRE 801(d)(2)(A).

Although defendant's own statements on the recordings were admissible, a review of the recordings shows that defendant did not manifest an adoption or belief in many of the statements that Richardson made on the recordings including her accusations that defendant had sex with

-6-

the victim. Therefore, the trial court erred in admitting Richardson's statements under MRE 801(d)(2)(B).

Before the enactment of MRE 801(d), the Michigan Supreme Court addressed tacit admissions in *People v Bigge*, 288 Mich 417; 285 NW2d 5 (1939). In *Bigge*, the Court held that the defendant's silence in response to another person's accusation of his guilt was inadmissible as substantive evidence of guilt. *Id.* at 420. *Bigge* remains binding precedent in that it "precludes admissibility of a defendant's failure to say anything in the face of an accusation as an adoptive or tacit admission under MRE 801(d)(2)(B) unless the defendant manifested his adoption or belief in its truth." *People v McReavy*, 436 Mich 197, 213; 462 NW2d 1 (1990) (quotation marks and citation omitted).

In this case, to the extent that defendant argues that the prosecutor improperly used his silence as evidence of an adoptive admission, his argument lacks merit. Before trial, the prosecutor did argue that defendant's silence or nonresponse to some of Richardson's statements amounted to evidence that defendant adopted Richardson's statements as his own. However, at trial, the prosecutor did not refer to defendant's silence on the telephone calls. Instead, the prosecutor focused on defendant's verbal responses to Richardson's statements. Therefore, defendant's silence was not improperly used against him.

With respect to whether defendant "manifested an adoption or belief" in the truth of Richardson's statements, "[a]dopted admissions are admissible when it clearly appears that the defendant understood and unambiguously assented to the statements made." *People v Lowe*, 71 Mich App 340, 346; 248 NW2d 263 (1976). "Testimony that an accused adopted statements of another person as his own admissions may be let in . . . if it clearly appears that the accused understood and unambiguously assented to those statements." *Id.* (quotation marks and citation omitted). However, even in circumstances that "[do] not infringe on defendant's right to remain silent, the use of adoptive admissions in criminal cases is still not favored." *People v Dietrich*, 87 Mich App 116, 130-131; 274 NW2d 472 (1978), rev'd in part on other grounds, 412 Mich 904 (1982).

In this case, defendant understood and unambiguously assented to some of Richardson's statements; however, he did not unambiguously assent to Richardson's statements accusing him of having sex with the victim.

The prosecutor used Richardson's statements to show that defendant attempted to coach Richardson by sending her police reports and "instructions." The prosecutor referred to Richardson's statement that, "You instructed me what to do." Defendant clearly understood and unambiguously assented to Richardson's statement that he "instructed me what to do." Defendant indicated that he sent letters to Richardson and repeatedly asked if Richardson received and read his letters. Richardson indicated that she read the letters, and at one point, she stated that defendant "instructed her" regarding what "to do." Defendant responded, "Right." Defendant's consistent inquiry into the police report and letters that he wrote to Richardson and the context of his responses showed that he understood and unambiguously assented to Richardson's statement that he provided instructions to Richardson. In short, Richardson's statement about receiving instructions was admissible under MRE 801(d)(2)(B), and it was relevant to show defendant's consciousness of guilt. See *People v Dixon-Bey*, 321 Mich App

490, 513; 909 NW2d 458 (2017) (explaining that "[e]vidence that a defendant made efforts to influence [a] . . . witness is relevant if it shows consciousness of guilt").

With respect to Richardson's statements accusing defendant of having sex with the victim, "cheating" on Richardson, and "messing around on me," defendant did not unambiguously assent to these statements. Specifically, during the last telephone conversation, when Richardson indicated that she had reviewed the police report and concluded that defendant "cheated," "messed around," and "had sex with her," defendant unequivocally denied Richardson's accusations. Defendant stated "no I didn't" three times after Richardson accused him of having "sex with her." Defendant also stated that Richardson was "dead wrong" and repeatedly denied that he had sex outside of their relationship. When Richardson asked defendant "how would she know that you like sucking feet?" defendant did not assent to the accusation that he sucked the victim's feet. Instead, defendant stated, "That's what you think" and "You're not the only [one] who likes having your toes sucked." In context of the conversation, the response clearly amounted to a denial of engaging in the alleged foot sucking. The statement showed that such an allegation did not require unique knowledge of defendant's sexual proclivities because other people liked the same type of sex act. Therefore, the trial court erred in admitting Richardson's accusations as adoptive admissions.

Although the trial court erred in admitting some of Richardson's statements, the plain error did not affect defendant's substantial rights in that it did not impact the outcome of the lower court proceeding. See *Carines*, 750 Mich at 763-764. Specifically, the prosecutor's use of the statements was limited to a portion of her closing argument and focused on defendant's response to the accusation about toe sucking. The prejudicial impact of this argument was limited in that the jury was already aware of defendant's proclivity to suck feet in that there was evidence that defendant's DNA was discovered on the victim's toes. In addition, defense counsel's closing argument framed the recordings in his favor. Specifically, defense counsel argued that during the conversation, defendant denied having sex with the victim and that he denied sucking on the victim's feet. In addition, the trial court instructed the jury that arguments made by the attorneys did not constitute evidence.

Moreover, apart from the recordings, there was other evidence of defendant's guilt. The evidence showed that defendant had access to the victim and an opportunity to commit the charged offenses. Defendant met the victim through a mutual acquaintance and was aware that the victim was alone and vulnerable. The victim provided detailed testimony and many aspects of the testimony were corroborated by other evidence. For example, a nurse testified that the victim had bruises on her body, a DNA expert testified that defendant was a contributor to DNA found on the victim's toes, and evidence showed that human hairs were recovered from the victim's toothbrush, which corroborated her testimony that defendant brushed his hair with the toothbrush. Furthermore, unprompted, defendant admitted to police that he left a liquor bottle at the victim's home, which bolstered the victim's account of the events of the night of the assault. Finally, the other-acts evidence supported that defendant acted according to a common plan or scheme in which he violently assaulted the victim. Accordingly, although the trial court erred in admitting some of Richardson's statements as adoptive admissions, the error did not affect defendant's substantial rights and defendant is not entitled to relief. See *id*.

IV. SUFFICIENCY OF THE EVIDENCE

-8-

Next, defendant argues that there was insufficient evidence of personal injury to sustain his convictions of CSC-I and CSC-II. We disagree.

A defendant's challenge to the sufficiency of the evidence is reviewed de novo. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). When analyzing a claim of insufficient evidence, this Court views the evidence in the light most favorable to the prosecution to determine "whether any rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt." *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003) (quotation marks and citation omitted; alteration in original).

The jury convicted defendant of eight counts of CSC-I pursuant to MCL 750.520b(1)(f)(*i*), which provides as follows:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration. Force or coercion includes, but is not limited to, any of the following circumstances:
>
> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

The jury convicted defendant of one count of CSC-II pursuant to MCL 750.520c(1)(f), which provides as follows:

> (1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
>
> * * *
>
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish the sexual contact. Force or coercion includes, but is not limited to, any of the circumstances listed in [MCL 750.520b(1)(f)].

On appeal, defendant argues there was insufficient evidence to prove the personal injury element of CSC-I and CSC-II. For purposes of both offenses, "personal injury" is defined to include both a "bodily injury" and "mental anguish." MCL 750.520a(n). "[B]odily injury and mental anguish are not alternative theories upon which a jury is required to make independent findings . . . ." *People v Asevedo*, 217 Mich App 393, 397; 551 NW2d 478 (1996). "Because bodily injury, mental anguish, and the other conditions listed in [MCL 750.250a(n)] are merely

-9-

different ways of defining the single element of personal injury . . . they should not be construed to represent alternative theories upon which jury unanimity is required." *Id*. "Accordingly, if the evidence of any one of the listed definitions is sufficient, then the element of personal injury has been proven." *Id*.

Viewed in a light most favorable to the prosecution there was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that the victim suffered a bodily injury as a result of the sexual assaults perpetrated by defendant.

Testimonies of the victim and the nurse examiner were sufficient to show that the victim suffered a bodily injury. Specifically, the victim explained that she suffered internal and external injuries "[f]rom my head to my toes and the soles of the bottom of my feet." She testified, "I had bruises, internal bruises with my vagina, back, my stomach was hurting bad, bruises on my back, fingernail in my flesh, and—right up in here (touches cheeks and mouth). It was in my breasts too 'cause he was doin' some crazy stuff and my back—." The victim testified that her vaginal area was "too sore down there." In addition, the victim's son testified that he observed bruises on the victim's back. Moreover, the nurse examiner physically examined the victim and documented bruises or red marks on the victim's right shoulder blade, right hip, right and left knee, left hip, and a scratch on her left hand. The nurse examiner documented redness of the labia minora and three tears to the fossa navicularis. There was redness and bruising on the cervix and walls of the vagina. Although these injuries were not large or permanent, to constitute a bodily injury for purposes of CSC-I and CSC-II, a physical injury "need not be permanent or substantial." *People v Mackle*, 241 Mich App 583, 596; 617 NW2d 339 (2000).

In sum, a rational jury could have concluded beyond a reasonable doubt that the record evidence established that defendant inflicted a personal injury upon the victim when he committed the sexual assault. See *Asevedo*, 217 Mich App at 397.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, in a Standard 4 brief, defendant argues that he was denied the effective assistance of counsel. Whether defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). A trial court's findings of fact, if any, are reviewed for clear error, while constitutional issues are reviewed de novo. *Id*. at 579. In cases such as the instant case in which there was no evidentiary hearing held, this Court's review is limited to mistakes apparent on the record. *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994).

To establish ineffective assistance of counsel, a defendant must show that (1) counsel rendered assistance that "fell below an objective standard of reasonableness" under the prevailing professional norms, and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ." *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000) (quotation marks and citation omitted; ellipsis in original). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks and citation omitted). Furthermore, "[b]ecause the defendant bears the burden

of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Id*.

Defendant argues that defense counsel failed to meet with him to discuss or develop trial strategy during his representation. Assuming defense counsel did not physically meet with defendant before trial, defendant fails to articulate how defense counsel could have altered his trial strategy if he had first met with defendant. Defendant has failed to establish a factual predicate for this claim. See *People v Ackerman*, 257 Mich App 434, 455-456; 669 NW2d 818 (2003). Moreover, "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

Defendant also argues that his counsel was ineffective in the way he responded to the prosecution's DNA expert. Defendant notes that the trial court granted defense counsel's pretrial motions for the appointment of an independent DNA expert and for independent probabilistic genotyping. However, defendant argues that defense counsel failed to secure the services or testimony of an independent DNA expert and failed to obtain "independent probabilistic genotyping" of the prosecution's DNA evidence. This argument lacks merit.

Defendant fails to articulate what testimony an independent DNA expert could offer that would have altered the outcome of the trial and he therefore fails to establish the factual predicate for his claim. See *Ackerman*, 257 Mich App at 455-456. This Court has held that probabilistic genotyping evidence is admissible in a criminal trial. See *People v Muhammad*, 326 Mich App 40, 47; ___NW2d___ (2018). Moreover, the decision whether to retain an expert witness is a matter of trial strategy, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), and, as noted, "this Court will not second-guess defense counsel's judgment on matters of trial strategy" *Benton*, 294 Mich App at 203. Defense counsel conducted a thorough cross-examination of the prosecution's DNA expert and asked relevant questions, including questions focused on the presence of four DNA donors on the relevant sample. In short, the record does not support that defense counsel was deficient in challenging the expert's testimony through cross-examination as opposed to securing an expert witness.

Finally, defendant contends that defense counsel was deficient when he stipulated to the admission of the expert's suppression hearing testimony at trial and failed to vigorously cross examine the prosecution's expert. Defendant fails to cite to the record to indicate where defense counsel stipulated to the admission of pretrial testimony, and we were unable to locate such testimony. Defendant has, therefore, abandoned this argument. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."). With respect to defendant's argument regarding cross-examination, as previously noted, defense counsel conducted a thorough cross-examination of the expert, and defendant has failed to articulate how defense counsel's questioning was deficient. See *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (noting that decisions regarding the questioning of a witness are matters of trial strategy and that "[t]his Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight").

Finally, defendant argues that this Court should remand this case to the trial court for a *Ginther*[1] hearing. This request is not proper in defendant's Standard 4 brief, but rather must be filed as a separate motion. See MCR 7.211(C)(1). Nevertheless, defendant has not shown that a *Ginther* hearing is warranted. Defendant's affidavit did not demonstrate the actual existence of an issue that requires further factual development. Mere conjecture is insufficient to warrant a *Ginther* hearing. See MCR 7.211(C)(1) (requiring a motion for remand to be "supported by an affidavit or offer of proof regarding the facts to be established at a hearing"). Thus, defendant has failed to show that remand for a *Ginther* hearing is warranted. See *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009).

## VI. CONCLUSION

Affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michael J. Riordan

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).